UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICOLAS VILLA, JR.**, Chief, Ione Band of Miwok Indians of California, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 12-1086 (RMC) |
| **KENNETH LEE SALAZAR**, Secretary of the Interior, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION**

Under the Administrative Procedure Act, Nicolas Villa, Jr., challenges the decision of the Bureau of Indian Affairs to acquire in trust a parcel of land in Amador County, California, for Indian gaming purposes. Chief Villa alleges that Interior should not have acquired the land and should not have recognized the Ione Band of Miwok Indians as a "restored tribe" under the Indian Gaming Regulatory Act because that group is unconnected to the tribe led by Chief Villa, called the Ione Band of Miwok Indians of California. Interior moves to transfer this case to the United States District Court for the Eastern District of California. For the following reasons, transfer will be granted.

**I.  FACTS**

**A.  Background and Procedural History**

On June 29, 2012, Chief Villa filed his Complaint against Kenneth Salazar, Secretary of the Department of the Interior, and Kevin K. Washburn,[1] Assistant Secretary for

---

[1] Mr. Washburn, who was confirmed by the Senate on September 21, 2012 and sworn in on October 9, 2012, is automatically substituted as a party for Donald E. Leverdure pursuant to Fed. R. Civ. P. 25(d).

1

Indian Affairs of the Department of the Interior (collectively, "Interior").  *See* Compl. [Dkt. 1].  Chief Villa avers that he "heads the Tribe known as the Ione Band of Miwok Indians of California that for centuries has inhabited lands in present day Amador County, California."  *Id.* ¶ 8.  Chief Villa's allegations concern a "group calling itself the Ione Band of Miwok Indians," which "includes as purported members persons with little or no ancestral or other connection to the historic Tribe headed by [Chief] Villa and his father."  *Id.* ¶ 12.

According to Chief Villa, the Ione Band of Miwok Indians applied to Interior in 2004 for an "opinion as to whether the Plymouth Tracts," a 228-acre parcel of land in Amador County, "would qualify for gaming if [Interior] agreed to acquire the lands in trust for its benefit" under the Indian Gaming Regulatory Act of 1988 ("IGRA"), 25 U.S.C. §§ 2701–21.  Compl. ¶¶ 1, 14–15.  In 2006, an Associate Solicitor for Indian Affairs determined that the Plymouth Tracts would qualify as "restored lands" under IGRA.  *Id.* ¶ 16.  Chief Villa contends that the Ione Band of Miwok Indians has not achieved the formal acknowledgement necessary to qualify as a "restored" tribe under IGRA and its regulations promulgated in 2008.  *See id.* ¶¶ 18–24 (citing, *inter alia*, Gaming on Trust Lands Acquired After October 17, 1988, 73 Fed. Reg. 29,354 (May 20, 2008) (codified at 25 C.F.R. Part 292).  Chief Villa asserts that in 2009 Interior "reverse[d] and withdr[ew]" the 2006 Solicitor's opinion, concluding instead that the Ione Band of Miwok Indians is "not a restored tribe."  *Id.* ¶ 26 (internal quotation marks omitted).  Notwithstanding this disavowal, Interior approved the acquisition in trust of the Plymouth Tracts in May 2012, relying on the 2006 ruling and determining that "the group purporting to be the Ione Band of Miwok Indians [is] eligible to conduct gaming operations there on the basis of IGRA's restored lands exception."  *Id.* ¶¶ 26–27.  Chief Villa claims that Interior's 2012

approval was arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and asks the Court to enjoin the acquisition, which has not been consummated.

On January 18, 2013, Interior filed a Motion to Transfer Venue to the United States District Court for the Eastern District of California, relying in large part on the fact that two similar cases are pending in that court. *See* Mot. Transfer [Dkt. 7]. Chief Villa opposed the motion. *See* Opp. [Dkt. 10]. Interior filed its Reply on March 22, 2013, *see* Dkt. 11, and the matter is now ripe for decision.

### 2. The California Cases

Interior's Motion to Transfer is premised on the pendency of "two ongoing, related actions in the Eastern District of California" ("California cases") that, according to Interior, involve "the same agency decision" at issue in this case. Mot. Transfer at 7. Interior did not provide this Court with any identifying information for the California cases. The Court has located and takes judicial notice[2] of *County of Amador v. United States Department of the Interior, et al.*, Case no. 2:12-cv-0710-JAM-CKD (E.D. Cal. filed June 27, 2012) ("*County of Amador*"), and *No Casino in Plymouth, et al., v. Salazar, et al.*, Case no. 2:12-cv-01748-JAM-CMK (E.D. Cal. filed June 29, 2012) ("*No Casino*"). The California cases have been deemed related and are both before the Honorable John A. Mendez and Magistrate Judge Craig M. Kellison. *See* Related Case Order, *County of Amador* [Dkt. 10], (E.D. Cal. July 24, 2012). Judge Mendez sits in the United States Courthouse in Sacramento, which is approximately forty-two miles driving distance from Ione, California, where Chief Villa lives.[3]

---

[2] *See* Fed. R. Evid. 201 (governing taking of judicial notice).

[3] "The court has the authority to take judicial notice of information contained within the public domain, such as the distance between two locations." *Richard v. Bell Atl. Corp.*, 209 F. Supp. 2d 23, 27 n.2 (D.D.C. 2002) (citing, *inter alia*, *Starr v. J. Hacker Co.*, 688 F.2d 78, 81 (8th Cir. 1982) (affirming the trial court's decision to take judicial notice of the fact that New York City is

Both *County of Amador* and *No Casino* involve APA challenges to Interior's May 24, 2012 administrative decision approving the acquisition of the Plymouth Parcels and, in particular, to the determination that the parcels are "restored lands" on the basis of the "restored tribe" status of the Ione Band of Miwok Indians.[4]  *See* First Am. Compl., *County of Amador*, [Dkt. 14] (E.D. Cal. Sept. 20, 2012); First Am. Compl., *No Casino*, [Dkt. 10] (E.D. Cal. Oct. 1, 2012).  In *County of Amador*, Interior answered the First Amended Complaint and moved for judgment on the pleadings.  The plaintiff County moved for leave to file a Second Amended Complaint.  Judge Mendez held a hearing on February 6, 2013, and took both motions under advisement.  In *No Casino*, Interior answered the First Amended Complaint on December 10, 2012, and the parties filed a joint status report that same day.  On December 12, 2012, the court directed the parties to file a joint status report no later than May 3, 2013; that entry is the last that appears on the docket.

## II.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Smiths Indus. Med. Sys., Inc. v.*

---

more than 100 miles from Nebraska)).  The Court takes judicial notice of the approximate distance from Sacramento to Ione.  *See* Google Maps, available at http://maps.google.com/ (last accessed Mar. 25, 2013; copy available in court files).

[4] Both California cases also involve other claims—for example, the plaintiffs in *No Casino* also challenge Interior's decision under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*.

*Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989) ("The decision whether to transfer under § 1404(a) is left largely to the district court's discretion, and of necessity depends on the facts of each case."). The moving party bears the burden of establishing that (a) the plaintiff could have originally brought the action in the proposed transferee district, and that (b) considerations of convenience and the interest of justice weigh in favor of transfer. *See Van Dusen*, 376 U.S. at 622–23; *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Under § 1404(a), a court must balance a number of case-specific private and public interest factors. *See Stewart Org.*, 487 U.S. at 30. Specifically:

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Trout Unlimited*, 944 F. Supp. at 16.

Generally, a "[p]laintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant." *Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987). However, a transfer may be "appropriate when there is an ongoing related case in another jurisdiction." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (citing *In re Scott*, 709 F.2d 717, 721 & n.10 (D.C. Cir. 1983)); *see also Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13–14 (D.D.C. 2001). "When lawsuits involving the same controversy are filed in more than one jurisdiction, the general rule is that the court that first acquired jurisdiction has priority." *Biochem Pharma,*

*Inc.*, 148 F. Supp. 2d at 13 (citing *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975)).  The D.C. Circuit views this "first-filed" concept as a guide, not a rule, and requires weighing equitable considerations in determining whether to transfer a case.  *See Columbia Plaza Corp.*, 525 F.2d at 627–29.

### III.  ANALYSIS

#### A.  Venue is Proper in the Eastern District of California

The Court must first address whether venue would be proper in the transferee court proposed by Interior, the Eastern District of California.[5]  Interior argues that venue would be proper in the Eastern District of California under 28 U.S.C. § 1391(e)(1) because "[t]he events that ultimately gave rise to this claim—the decision to by [sic] the United States Department of the Interior to acquire the Plymouth Parcels in Amador, County, California, on behalf of the Ione Band for the intended construction of a Class III gaming facility—occurred within the Eastern District of California."  Mot. Transfer at 5–6.  Interior also notes that Chief Villa resides in that district.  *Id.*  In his opposition, Chief Villa addresses only whether transfer is appropriate under 28 U.S.C. § 1404(a) and does not argue that venue would be improper in the Eastern District of California.  He has thus waived any argument on the latter point.  *See CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996); *see also Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

---

[5] The case presents no issue of subject matter jurisdiction because Chief Villa's APA claim raises a federal question over which all United States District Courts have subject matter jurisdiction.  *See* 28 U.S.C. § 1331.

28 U.S.C. § 1391(e)(1) governs venue in cases "in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States." Such cases may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." *Id.*

The Court finds that venue is proper in this case both in the District of Columbia and in the Eastern District of California. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) because the Secretary of the Interior and Assistant Secretary for Indian Affairs "reside[]" in the District of Columbia. *See Lamont v. Haig*, 590 F.2d 1124, 1126–32 (D.C. Cir. 1978) (interpreting 28 U.S.C. § 1391(e)). However, venue is also proper in the Eastern District of California under 28 U.S.C. § 1391(e)(1)(B) because that district is where "a substantial part of the events or omissions giving rise to the claim occurred." Chief Villa's claim is that Interior's acquisition of the Plymouth Tracts was improper, and the Plymouth Tracts are located in Amador County, as is Chief Villa's residence. Compl. ¶¶ 1, 8, 14–15. Amador County is within the Eastern District of California. *See* 28 U.S.C. § 84(b) (defining judicial district of the Eastern District of California). Moreover, Interior notes that "much of the investigation that formed the basis of [Interior's] decision, including by the Regional Director of the Bureau of Indian Affairs, was conducted in California." Mot. Transfer at 6. Because venue is proper in the Eastern District of California, that district is one in which Chief Villa originally could have brought this lawsuit. *See Van Dusen*, 376 U.S. at 622–23.

Accordingly, the question becomes whether transfer is appropriate under 28 U.S.C. § 1404(a).

### B. Transfer Is in the Interest of Justice

In its Motion to Transfer, Interior emphasizes two factors that weigh in favor of transfer. Mot. Transfer at 7–9. First, Interior asserts that "preventing unnecessary expense to the public and duplicative use of judicial resources" favors transfer because this case and the California cases "all seek judicial review of the same agency decision." *Id.* at 7 (citing *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960)). The second important factor, according to Interior, is that this case involves a "localized controversy" that should be "resolved locally where concerned parties may closely follow the proceedings." *Id.* at 7–8. Interior further contends that convenience to the parties favors transfer because Chief Villa will not be inconvenienced by a transfer to a judicial district near his home, while Interior's counsel, who is "already intimately familiar with the facts and issues of this case," is located in San Francisco. *Id.* at 8–9. Also, according to Interior, transfer would accommodate any potential witnesses, most of whom are located in California, as well as the Ione Band of Miwok Indians, which is located in Amador County and which "plans to intervene in this action." *Id.*

Chief Villa responds that the Court should "exercise [its] discretion in favor of retaining jurisdiction" in this district. Opp. at 2–3. He notes that the District of Columbia was the forum he chose and asserts that there are "national implications" raised by the acquisition of the Plymouth Tracts. *Id.* In addition, Chief Villa contends that a transfer is not warranted because the United States District Court for the Eastern District of California is severely overworked and because "Mr. Villa's counsel are not admitted in the Eastern District of California, and have not been retained for purposes of representation in the matter there." *Id.* at 3–5. Chief Villa relies principally on the recent decision of another judge of this Court, *Stand*

8

*Up for California! v. Department of the Interior* ("*Stand Up!*"), __ F. Supp. 2d __, Civ. Nos. 12-2039 (BAH), 12-2071 (BAH), 2013 WL 324035 (D.D.C. Jan. 29, 2013), in which the Honorable Beryl Howell declined to transfer a similar fee-to-trust action to the Eastern District of California under 28 U.S.C. § 1404(a).

After weighing all of the public and private interest considerations, *see Trout Unlimited*, 944 F. Supp. at 16, the Court finds that a transfer to the Eastern District of California is appropriate under 28 U.S.C. § 1404(a). Paramount in the § 1404(a) inquiry in this case is the pendency of the California cases, which, as indicated, involve APA challenges to the exact same decision at issue in this case. Judicial economy and convenience strongly favor transfer of this case to the district in which the California cases are pending. *See Tice v. Pro Football, Inc.*, 812 F. Supp. 255, 257 (D.D.C. 1993) ("It is pointless to keep separate two highly related cases at this time."); *Smiths Indus.*, 728 F. Supp. at 7 ("[A] sua sponte transfer under § 1404(a) is appropriate when there is an ongoing related case in another jurisdiction."). The policy favoring consolidation of related actions in the same district is all the more persuasive here where the first California case, *County of Amador*, was the first of the three filed—albeit by two days—and is further along than this case. *See Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349–50 (D.C. Cir. 2003) (holding that district courts should evaluate first-to-file considerations by "balanc[ing] equitable considerations rather than using a mechanical rule of thumb" (internal citation and quotation marks omitted)). In a potentially complex APA case like this one, which involves a lengthy factual history and a complicated statutory and regulatory scheme that the transferee district has begun dissecting, the interest of justice favors transfer. *See Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 n.25 (E.D. Va. 1988) (collecting § 1404(a) cases involving "familiarity with

9

the applicable law"). Moreover, the pendency of the California cases demonstrates that other parties in the greater Amador County area are interested in the acquisition of the Plymouth Tracts, which also favors transfer to the Eastern District of California. *See MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 576 (D.C. Cir. 2010) (discussing the "local interest in having localized controversies decided at home").

The factors relied on by Chief Villa ordinarily would counsel for retention in this district. However, the fact that he has chosen this forum is entitled to less deference than it otherwise would be because he is a "non-resident who lacks a substantial connection to the chosen forum." *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 150 (D.D.C. 2008) (citation omitted). The Eastern District of California is located much closer to Chief Villa's home and is perfectly capable of deciding this case carefully and fairly, further minimizing any concerns about the convenience of the transferee forum for Chief Villa. While Chief Villa's counsel may not yet be admitted in that court, that factor is not dispositive. Moreover, the Court notes that along with the signature of local counsel, Chief Villa's opposition bears the signature of an attorney from Oklahoma who, according to the opposition, intends to file a motion for *pro hac vice* admission to this Court. *See* Opp. at 5–6. Chief Villa has made no argument as to why his counsel cannot make a similar arrangement in California.

The congestion in the Eastern District of California recognized by the *Stand Up!* court would ordinarily weigh in favor of this Court retaining the case. However, any marginal likelihood that this Court would resolve the case with more speed is outweighed by the fact that the Eastern District of California is already reviewing the same Record of Decision and will be doing so without regard to whether this Court retains this case. There is no reason to have two courts reviewing the same administrative record without extraordinary need or other

distinguishing features, which are not present here.  Moreover, notwithstanding the similarities between the claims in *Stand Up!* and this case, Chief Villa's reliance on that case is unpersuasive.  The *Stand Up!* court, which issued its ruling on January 29, 2013, emphasized that "[o]f overarching importance" in its decision not to transfer the case was the fact that "the government defendants . . . [had] made clear that they [would] transfer the Madera Site into trust on February 1, 2013 regardless of whether any court [had] yet made a ruling on whether the plaintiffs [were] entitled to preliminary injunctive relief."  2013 WL 324035 at *9.  For that reason, the *Stand Up!* court reached the merits of the plaintiffs' motion for a preliminary injunction at the same time it issued its ruling on venue transfer, denying preliminary injunctive relief after lengthy analysis.  *See id.* at *10–28 ("[A]bsent a demonstrated likelihood that the Secretary has acted improperly in transferring the Madera Site into trust for the purpose of developing a gaming establishment, enjoining that agency action would not be in the public interest.").  The impending transfer in *Stand Up!* is an important distinction that fully explains that court's decision to retain jurisdiction, but there is no such exigency here.

The Court thus finds that the "consideration[s] of convenience and fairness" in this case weigh in favor of transfer to the Eastern District of California under 28 U.S.C. § 1404(a).  *See Stewart Org.*, 487 U.S. at 29.

## IV.  CONCLUSION

For the foregoing reasons, Interior's Motion to Transfer, Dkt. 7, will be granted.  A memorializing Order accompanies this Memorandum Opinion.

DATE: March 28, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge

11